IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

In Re:                                               \*

        East Coast Welding and Construction Co., Inc.      \*

                                                 \*       Case No. 22-14850

                                                 \*

                                                 \*

                             Debtor(s)            \*       Chapter 11

                                                 \*

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## DEBTOR'S AMENDED CHAPTER 11
## SUBCHAPTER V PLAN OF REORGANIZATION

        East Coast Welding and Construction Co., Inc., the debtor and debtor in possession herein (the "Debtor"), proposes the following Chapter 11, Subchapter V Plan of Reorganization (the "Plan") pursuant to §§ 1190, 1191 and 1193 of Chapter 11 of the United States Code (the "Bankruptcy Code"). On September 4, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

<u>Background</u>

**A. Introduction**

     1.  On September 4, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The debtor continues in possession of its property and manages its financial affairs as a debtor in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

     2.  The Debtor designated itself as a small business debtor, as that term is set forth in Bankruptcy Code § 101 (51D), and as it reflected on its voluntary petition,

elected to have subchapter V (The Small Business Reorganization Act of 2019) of Chapter 11 apply to its case.

3. Pursuant to the Notice of Appointment of Subchapter V Trustee [Dkt. # 6], Monique Desiree Almy was appointed the duly-qualified Subchapter V Trustee in this proceeding.

4. No official committee of unsecured creditors will be appointed pursuant to Bankruptcy Code § 1181 (b).

5. No request for a trustee or examiner has been made in this Chapter 11 case other than the standing trustee pursuant to Bankruptcy Code § 1183(a). No party has made any request to remove the Debtor as a debtor in possession pursuant to Bankruptcy Code § 1185.

### B. Overview of the Debtor's Business

6. The Debtor is a Maryland corporation founded in 1980 with its headquarters located in Glen Burnie, Maryland.

7. Christopher D. Brown, the Debtor's president and sole share holder, with over forty years in the mechanical contracting industry, purchased the company in December 2006. The Debtor functions as a mechanical contractor that provide services for installation, maintenance and repair of boilers, burners, chillers, and cooling towers. The company operates its warehouse and offices out of its Glen Burnie, Maryland facility. The Debtor currently employs over seven (7) people.

<u>Important Information about this Plan</u>

All Creditors and Interest Holders should review this Plan in its entirety and specifically refer to Artiles I through III of this Plan for information regarding the precise treatment of their Claims or Interests. Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.) This Plan is a proposal by the Debtor and subject to Bankruptcy Court approval after opportunity

2

for objections and a hearing. Please refer to the Initial Scheduling Order Relating to the Debtor's Proposed Subchapter V Plan of Reorganization [Dkt. # 5] entered by the Court for important information regarding Plan voting and objection deadlines.

Definitions and Rules of Construction

The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan, and they are supplemented by the following definitions:

A. Definitions

Unless the context otherwise specifies or requires, the following terms shall have the meanings herein specified, such definitions to be applicable equally to the singular and plural forms of each terms and to all genders:

Administrative Expense Claims shall mean any Claim which is entitled to administrative priority status pursuant to §§ 503(b) and 507(a)(2) of the Bankruptcy Code including, without limitation, the fees and expenses of the Professionals employed by the Debtor and any taxes incurred during the pendency of this case.

Allowed with respect to any Claim shall mean: (i) a Claim against the Debtor that has been listed on the Debtor's Schedules, as such Schedules may be amended from time to time pursuant to Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary Proof of Claim has been filed, (ii) any Claim for which a Proof of Claim was properly and timely filed in accordance with any order of the Bankruptcy Court, the Plan, the Bankruptcy Code, and the Bankruptcy Rules, as to which no objection to allowance is made by the Debtor or a party in interest or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective Holder or (iii) any Claim expressly allowed by a Final Order or pursuant to the Plan. Any Claim that has been or is hereafter listed in the Schedules

as contingent, unliquidated or disputed, and for which no Proof of Claim has been timely filed, is not considered allowed and shall be expunged on the effective date without further action by the Debtor and without any further notice to or action, order or approval of the Bankruptcy Court.

Bankruptcy Code shall mean the Bankruptcy Code, 11 U.S.C. §§ 1101 et seq., and any amendments thereto.

Bankruptcy Court shall mean the United States Bankruptcy Court the District of Maryland or any other court having jurisdiction over the Debtor's Chapter 11 case or any proceeding arising under this Chapter 11 Case.

Bankruptcy Rules shall mean (i) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under § 2075 of Title 28 of the United States Code, (ii) the Federal Rules of Civil Procedure, as amended and promulgated under § 2072 of Title 28 of the United States Code, (iii) the Local Rules of the Bankruptcy Court, and (iv) any standing orders governing practice and procedure issued by the Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and modifications there to the extent applicable to this case or proceedings herein, as the case may be.

Claim shall have the meaning ascribed to such term in § 101(5) of the Bankruptcy Code.

Class [#] shall mean any class in which Allowed Claims are classified pursuant to Articles II and III of this Plan.

Confirmation Date shall mean the date the entry of the Confirmation Order becomes a Final Order.

Confirmation Order shall mean the order of the Bankruptcy Court in this Chapter 11 case confirming the Plan pursuant to § 1129 and other applicable sections of the Bankruptcy Code.

Creditor shall mean the Holder of a Claim within the meaning of § 101(10) of the Bankruptcy Code, including Secured Creditors, Unsecured Creditors, and Creditors with Administrative Expense Claims and Priority Tax Claims.

Debtor shall mean East Coast Welding and Construction Co., Inc., the debtor in possession in this Chapter 11 case.

Disposable Income shall mean the Net Income of the Debtor less payment of expenditures necessary for the continuation, preservation, and operation of the Debtor's business, including reserves to account for the cyclical nature of the Debtor's business.

Effective Date shall mean the first business day following the date that is fourteen (14) days after the entry of the Confirmation Order.

Executory Contracts shall mean all contracts and unexpired leases to which the Debtor is a party, and which are executory within the meaning of § 365 of the Bankruptcy Code.

Final Order shall mean an order or judgment of the Bankruptcy Court which has not been reversed, stayed, or modified or amended and: (i) as to which the time to appeal or seek reconsideration or rehearing thereof or file a petition for certiorari has expired; (ii) in the event of a motion for reconsideration or rehearing or petition for certiorari is filed, such motion or petition shall have been denied by an order or judgment of the Bankruptcy Court or other applicable court; or (iii) in the event of an appeal is filed and pending, a stay pending appeal has not been entered; provided, however that with respect to an order or judgment of the Bankruptcy Court allowing or disallowing a Claim, such order or judgment shall have become final and non-appealable; and provided further, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or analogous rule under the Bankruptcy Rules, may be filed with respect

to such order or judgment shall not cause such order or judgment not to be a Final Order.

Holder shall mean (a) as to any claim, (i) the owner or holder of such Claim as such is reflected on the Proof of Claim filed with respect to such Claim, (ii) if no Proof of Claim has been filed with respect to such Claim, the owner or holder of such Claim as such reflected on the Schedules or the books and records of the Debtor or as otherwise determined by order of the Bankruptcy Court, (iii) if the owner or holder of such Claims has assigned or transferred the Claim to a third party and the Debtor has received sufficient written evidence of such assignment or transfer, the assignee or transferee; or (iv) any subrogee of a holder of a Secured Claim; and (b) as to any interest, the record owner or holder of such interest as of the Effective Date.

Impaired shall mean any Claim or Interest that is impaired within the meaning of § 1124 of the Bankruptcy Code.

Interest shall mean the interest of any stock holder/share holder interest in the Debtor.

Net Income shall mean all of the Debtor's sales (net of returns, discounts, and/or other credits) minus all cost of goods sold and minus all selling, general, and administrative expenses, operating expenses, depreciation, interest, taxes, and other expenses (as such terms are defined by generally accepted accounting principles, consistently applied).

Petition Date shall mean September 4, 2022, the date on which the Debtor commenced this Chapter 11 case.

Plan shall mean this Chapter 11, Subchapter V Plan of Reorganization in its present form or as it hereafter may be modified, amended, or supplemented in accordance with provisions of the Bankruptcy Code and Section 11.10 of this Plan.

Priority Tax Claim shall mean any Allowed Claim of a governmental unit pursuant to Bankruptcy Code § 507(a)(8); provided, however, any Claims for penalties asserted by governmental units shall not be a Priority Tax Claim.

Professionals shall mean persons, including attorneys, accountants, the Trustee, and other professionals, retained or appointed in the Chapter 11 case or to be compensated pursuant to §§ 327, 328, 330, 503(b), and 1103 of the Bankruptcy Code and Order of the Bankruptcy Court.

Projections shall mean the Debtor's monthly cash flow projections that are attached hereto as **Appendix 1**, as may be modified and amended.

Secured Claim shall mean a secured claim pursuant to § 506 of the Bankruptcy Code and shall mean an Allowed Claim in an amount equal to the present value of the applicable Creditor's interest in the Debtor's interest in the property, or in the amount subject to setoff, as may be established by this Plan, the Confirmation Order, or separate Order of the Bankruptcy Court.

Trustee shall mean **Monique Almy**, the Subchapter V trustee appointed in this Chapter 11 case pursuant to § 1183 of the Bankruptcy Code.

Unsecured Claim shall mean any Claims which is not an Administrative Expense Claim, Priority Tax Claim or a Secured Claim, including (i) any Claim arising from the rejection of an executory contract or unexpired lease under § 365 of the Bankruptcy Code, (ii) except as otherwise provided in the Plan, any portion of a Claim to the extent the value of the Creditor's interest in the estate's interest in the Debtor's property securing such Claim is less than the amount of the Allowed Claim, or to the extent that the amount of the Claim subject to setoff is less than the amount of the Allowed Claim, as determined pursuant to § 506(a) of the Bankruptcy Code, (iii) any Claim arising from the provision of goods or services to the Debtor prior to the Petition Date, and (iv) any Claim designated as an Unsecured Claim elsewhere in the Plan.

B. <u>Terms of Construction</u>

Capitalized terms used in this Plan shall have the meaning set forth herein. In the event a capitalized term is not defined herein, then it shall have the meaning given in the Bankruptcy Code or Bankruptcy Rules. In the event a capitalized term is not defined in the Plan, the Bankruptcy Code, or the Bankruptcy Rules, then it shall have the meaning such term has in ordinary usage and if one or more meaning for such term exists in ordinary usage, then it shall have the meaning which is most consistent with the purposes of this Plan and the Bankruptcy Code. The terms of this Plan shall not be construed against any person but shall be given a reasonable construction, consistent with the purposes hereof and of the Bankruptcy Code.

The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained in this Plan.

ARTICLE I
TREATMENT OF ADMINISTRATIVE
<u>EXPENSE CLAIMS AND PRIORITY TAX CLAIMS</u>

In accordance with § 1123 (a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified in the Plan. All parties claiming Administrative Expense Claims pursuant to § 507 (a)(2) of the Bankruptcy Code, but not already treated as such under the Plan, shall file an application to approve their respective asserted administrative claim priority status no later than thirty (30) days after the Effective Date.

Any claim that is granted administrative expense priority shall receive the treatment set forth as follows:

1.1    <u>Administrative Expense Claims</u>: Pursuant to 1191(b) of the Bankruptcy Code, each Holder of an Allowed Administrative Expense Claim (including Allowed Administrative Expense Claims of Professionals, including the

8

Trustee) shall receive on account of their Allowed Claim one distribution that totals the amount of their respective Allowed Claim which shall occur on the later to occur of: (a) **on the effective date of the plan**, or (b) **the date of a Final Order Allowing such Administrative Expense Claims**. Notwithstanding the above, each Holder of an Allowed Administrative Expense Claim may be paid under such other terms as may be agreed upon by both the Holder of such Allowed Administrative Expense Claim and the Debtor. All fees and expenses requested by the Holder of an Allowed Administrative Expense Claim are subject to review and approval by the Bankruptcy Court under §§ 329 and 330 of the Bankruptcy Code. The Debtor shall have the right to prepay such Allowed Priority Tax Claims at any time, in whole or in part, without penalty or premium. It is estimated that the Administrative Expense Claims for legal fees and expenses total approximately $50,000.00 as of December 5, 2022 (of which approximately $50,000.00 is expected to be paid during the pendency of this case) legal counsel holds a retainer in the amount of $20,000.00 plus an escrow of $30,000.00. Additional fees and expenses for a contested confirmation hearing are estimated at $10,000.00, for a potential estimated total of Administrative Expense Claims of $60,000.00. The proposed payment of Allowed Administrative Expense Claims is set forth on the Summary of Plan Disbursements attached as Appendix 2.

    1.2    Priority Wage Claims. None

    1.3    Priority Tax Claims

    a.    IRS. Claims made by the Internal Revenue Service ("IRS") explicitly designated and Allowed as a "priority" claim, shall receive the "Priority Tax Claim" treatment as specified in this section 1.3. As of the date of filing this Plan, the IRS has filed a claim. IRS filed proof of claim #6, as follows: Priority Claim $29,878.60, Total Claim $35,305.28. If the Debtor fails to make any payment within fourteen (14) days of the due date of such payment, if the Debtor fails to file

any required tax return by the due date of such return, or if the Debtor fails to make any payments due to the taxing authorities under this Plan, then the taxing authority may declare the Debtor in default and provide written notice to the Debtor and its bankruptcy counsel. The Debtor may cure any default by paying the amount due within fourteen (14) days of the note of default. If the Debtor does not make full payment within fourteen (14) days of such demand, then the taxing authority may collect any unpaid liabilities through administrative collection procedures and the automatic stay shall not be in effect as to these liabilities.

      b.    <u>State and Local</u>. Claims made by the State of Maryland, and explicitly designated and Allowed as a "priority" Claim, shall receive the "Priority Tax Claim" treatment as specified in this Section 1.3. Based upon the Schedules filed Debtor owed comptroller $12,852.40 and has resolved the outstanding debt, therefore no priority claim for state and local tax is estimated.

      c.    <u>Treatment</u>. After payment in full of all Allowed Priority Wage Claims, each Holder of Allowed Priority Tax Claim shall receive from the Debtor in accordance with § 1129(a)(9)(C) of the Bankruptcy Code, on account of such Allowed Priority Tax Claim, the amount of their respective Allowed Claims totaling $29,878.60 without interest, as soon as reasonably practicable after the date of a Final Order Allowing such Priority Tax claim. Notwithstanding the above, each Holder of an Allowed Priority Tax Claim may be paid under such other term as may be agreed upon by both the Holder of such Allowed Priority Tax Claim and the Debtor provided said agreement does not provide for treatment more favorable than the foregoing. The Debtor shall have the right to prepay such Allowed Priority Tax claims at any time, in whole or in part, without penalty or premium. The proposed payment of Allowed Priority Tax claims is set forth on the Summary of Plan Disbursements attached as Appendix 2.

10

ARTICLE II
CLASSIFICATION OF CLAIMS AND INTERESTS

2.1     General Overview. The Debtor has classified all Claims and Interests in accordance with §§ 1122, 1123, and 1190 of the Bankruptcy Code. A chart detailing each class of Claims or Interests under the Plan and the Debtor's proposed treatment for each is set forth on the Summary of Plan Disbursements attached as Appendix 2. A Claim is in a particular Class for purposes of voting on, and of receiving distributions pursuant to the Plan only to the extent such Claim has not been paid, released or otherwise settled prior to the Effective Date. The table in Section 2.2 below identifies each Class of Claims under the Plan and whether such Class is Impaired or Unimpaired.

2.2     Designation of Classes. This Plan provides for the establishment of the following Classes of Claims or Interests as provided in § 1122 of the Bankruptcy Code:

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| 1 | Allowed Secured Claim of Ally Financial | Unimpaired | No |
| 2 | Allowed Secured Claim of GM Financial/Americredit | Unimpaired | No |
| 3 | Allowed Secured Claim AJ Equity Group, LLC | Unimpaired | No |
| 4 | Allowed Secured Claim GFE NY, LLC/Global Funding | Impaired | Yes |
| 5 | Allowed Unsecured Claims | Impaired | Yes |
| 6 | Allowed Claims of Christopher Brown | Impaired | Yes |
| 7 | Allowed Interests | Unimpaired | No |

11

## ARTICLE III
## TREATMENT OF CLAIMS AND INTERESTS

3.1      Class 1 – Allowed Secured Claim of Ally Financial: Ally Financial, and its successors or assigns (herein the "Holder of the Class 1 Claim"), shall have an Allowed Claim. After payment in full of any Allowed Administrative Expense or Priority Wage or Priority Tax Claims set forth in Sections 1.1, 1.2 , 1.3 of this Plan, and in full and complete satisfaction, discharge and release of the Class 1 Claim, the Debtor shall pay the Holder of Allowed Class 1 Claim as required by the respective loan documents. The Holder of the Class 1 Claim shall retain its prepetition lien on the property that secures the payments provided under the Plan. Class 1 is Unimpaired and, therefore, the Holder of the Class 1 Claim is not entitled to vote to accept or reject the Plan.

3.2      Class 2 – Allowed Secured Claim of GM Financial: GM Financial, and its successors or assigns (herein the "Holder of the Class 2 Claim"), shall have an Allowed Claim. After payment in full of any Allowed Administrative Expense or Priority Wage or Priority Tax Claims set forth in Sections 1.1, 1.2, 1.3 of this Plan, and in full and complete satisfaction, discharge and release of the Class 2 Claim, the Debtor shall pay the Holder of Allowed Class 2 Claim as required by the respective loan documents. The Holder of the Class 2 Claim shall retain its prepetition lien on the property that secures the payments provided under the Plan. Class 2 is Unimpaired and, therefore, the Holder of the Class 2 Claim is not entitled to vote to accept or reject the Plan.

3.3      Class 3 – Allowed Secured Claim of AJ Equity Group, LLC: AJ Equity Group, LLC, and its successors or assigns (herein the "Holder of the Class 3 Claim"), shall have an Allowed Claim in the amount of **$141,591.21**. After payment in full of any Allowed Administrative Expense or Priority Wage or Priority Tax Claims set forth in Sections 1.1, 1.2, 1.3 of this Plan, and in full and complete

satisfaction, discharge and release of the Class 1 and Class 2 Claim, the Debtor shall pay the Holder of Allowed Class 3 Claim as required by the respective loan documents. The Holder of the Class 3 Claim shall retain its prepetition lien on the property that secures the payments provided under the Plan. Class 3 is Unimpaired and, therefore, the Holder of the Class 3 Claim is not entitled to vote to accept or reject the Plan.

3.4     Class 4 – Allowed Secured Claim of GFE NY, LLC.: GFE NY, LLC, and its successors or assigns (herein the "Holder of the Class 4 Claim"), shall have an Allowed Claim in the amount of **$99,427.00**. After payment in full of any Allowed Administrative Expense or Priority Wage or Priority Tax Claims set forth in Sections 1.1, 1.2, 1.3 of this Plan, and in full and complete satisfaction, discharge and release of the Class 1 and Class 2 Claim, the Debtor shall pay the Holder of Allowed Class 4 Claim as required by the respective loan documents. The Holder of the Class 4 Claim shall retain its prepetition lien on the property that secures the payments provided under the Plan. Class 4 is Impaired and, therefore, the Holder of the Class 4 Claim is entitled to vote to accept or reject the Plan. The balance of the GFE NY, LLC claim is unsecured in the amount of $117,844.00 per the Motion to Value and Court Order [see ECF Docket #65] and will be paid as a Class 5 Claim.

3.5     Class 5 – Allowed Unsecured Claims. "Class 5 Claim(s)" shall be all other Claims not otherwise expressly herein provided for except for any Claim made by Christopher Brown. After payment in full of Allowed Class 1, Class 2, Class 3 and Class 4 Claims, and of any Allowed Administrative Expense or Priority Wage or Priority Tax Claims set forth in Sections 1.1, 1.2 and 1.3 of this Plan, and in full and complete satisfaction, discharge and release of Class 1, Class 2, Class 3 and Class 4 Claims, the Debtor shall pay the Holders of Allowed Class 5 Claims without interest their pro-rata share of all available Disposable Income of the Debtor. Distributions to Holders of Allowed Class 5 Claims shall occur on a bi-

13

annual basis (in accordance with the priorities hereinabove set forth), with a maximum of ten distributions in total, which distributions will be made on a bi-annual basis with the first distribution occurring on the later to occur of: after satisfaction of the Administrative Expense Claims, Priority Tax Claims and Priority Wage Claims detailed in Article 1 above; and payment in full of any obligations owing in Class 1, Class 2, Class 3 and Class 4 as set forth in Sections 1.1, 1.2 and 1.3 of this Plan and the Summary of Plan Disbursements attached as **Appendix 2**. Any payments to a Class 5 Creditor holding a Disputed Claim is also contingent upon entry of a Final Order allowing such Class 5 Claim. See Section 5.4 below governing Disputed claims. Said installment payments shall continue to be paid on every **March 31** and **September 30** thereafter, ending in **September 2028**. The amount of each of said disbursements shall equal **100%** of the **Disposable Net Income,** for the preceding six full calendar month period from **September to March** and **March to September** (as applicable), not to exceed (individually or in the aggregate) the amount of Claimant's Allowed Claim. Class 5 is Impaired and therefore, the Holders of a Class 5 Claim are entitled to vote to accept or reject the Plan.

3.6     Class 6 – Claims of Christpher Brown. "Class 6 Claim(s)" shall be any Allowed Claim made by or behalf of Christpher Brown. Holders of Allowed Class 6 Claims shall receive no distributions under this Plan. Mr. Brown, as the owner of the Debtor, has agreed to waive any distribution and treat that as an equity investment into the Debtor and treat that waiver as further justification for not pursuing any preference actions in this case. It is estimated that there may be preference claims that could have been pursed by the Debtor that total approximately $242,000.00 However, Mr. Brown believes that the pursuit of preferences recoveries in this bankruptcy cases would be disruptive to the business relationships that are necessary for an effective reorganization and his contribution

of his claims totaling $282,000.00 is more valuable than any preference litigation recoveries that might be had. Class 6 is Impaired and, therefore, the Holders of a Class 6 Claim are entitled to vote to accept or reject the Plan.

3.7 <u>Class 7 – Allowed Interests</u>: On the Effective Date, the legal, equitable and contractual rights of the Holders of the Interests in the Debtor shall be retained unaltered. Class 7 is Unimpaired. As a result, pursuant to § 1126(f) of the Bankruptcy Code, each Holder of an Interest is conclusively deemed to have accepted the Plan and, therefore, is not entitled to vote to accept or reject the Plan.

ARTICLE IV
<u>EXECUTION AND IMPLEMENTATION OF PLAN</u>

4.1 <u>Vesting of Property in the Debtor Free and Clear</u>. Except as provided in the Plan or the Confirmation Order, all the property of the estate pursuant to §§ 1141(b) and 1141(c) of the Bankruptcy Code, vests in the Debtor as of the Effective Date free and clear of any Claim of any Creditor provided for by this Plan.

4.2 <u>Corporate Governance</u>: Upon the Effective Date, the Debtor shall continue to be controlled and managed by its Officers and Board of Directors consistent with the Debtor's Articles of Incorporation and By-laws. As disclosed in the Statement of Compensation filed on October 25, 2022 [Dkt. #46]. Mr. Brown receives compensation and commissions of at least $2,000.00 per weekly pay period. Annual salary is approximately $104,000.00.

4.3 <u>Source of Payments</u>. During the term of this Plan the Debtor shall pay all available Disposable Income necessary for the performance of the Plan, which Disposable Income is projected as set forth in the Projections of Net Disposable Income attached as Appendix 1.

4.4 <u>Plan Term</u>. The term of the Plan begins on the Effective Date and ends on the last day of the sixtieth (60th) full calendar month following **September 2023**.

4.5     <u>Disposable Income and Plan Funding</u>. An exhibit describing (a) the Debtor's projected Disposable Income (the "Projections"), (b) the details supporting and the assumptions under which the Projections were made, (c) the source and value of funds and assets available for distribution under the Plan, and (d)  summary of payments under the Plan is attached as Appendix 1.

ARTICLE V<br><u>DISTRIBTUIONS UNDER THE PLAN</u>

5.1     <u>General</u>. The value of the property to be distributed under the Plan during the term of the Plan is not less than the Debtor's entire projected Disposable Income for that same period. In accordance with this Plan, the Debtor projects that it will make distributions to Unsecured Creditors holding Allowed Claims that the Debtor has valued at approximately one hundred percent (100%) of Disposable Net Income estimated to be nine cents ($0.09) on the dollar for Allowed Class 5 Claims. If the Claims are amended or increased, the projections not met or the Debtor's plan is confirmed on a non-consensual basis, then the plan distribution may decrease. If the claims decrease or the projections are exceeded, then the Plan distribution may increase. The Plan also provides for the payment of Administrative Expense Claims, Priority Wage and Tax Claims and Secured Claims in accordance with the Bankruptcy Code.

5.2     <u>Allocation of Distribution</u>. Unless an alternative payment application order is specifically described in this Plan regarding any Allowed Claim(s) , distributions to any Holder of an Allowed Claim shall be allocated first to the principal portion of any such Allowed Claims and, only after the principal portion of any such Allowed Claim is satisfied in full, to any portion of each Allowed Claim comprising interest or other charges (but solely to the extent that such interest or other charges are an allowable portion of such Allowed Claim), except as

16

otherwise expressly provided for herein. For the avoidance of doubt, the foregoing shall not be interpreted to expand on the payment obligations and/or treatment provisions of any Claim in Article III. All payments shall be made in accordance with the priorities established by the Bankruptcy Code.

5.3     <u>Delivery of Distributions and Time Bar to Payment</u>. The Debtor shall make distributions provided for in the Plan. The Debtor shall stop payment on any distribution check that is not cleared through the account upon which such check is drawn within sixty (60) days of the date of distribution. Distribution checks shall be mailed to the addresses given in Proofs of Claim filed herein, or, as to those Creditors who did not file a Proof of Claim to the addresses listed in the Debtor's Schedules, unless the Debtor receives other instructions in writing from such Creditor(s). All funds which are not distributed as a result of stopped checks shall become property of the debtor for use in subsequent distributions. It shall be the obligation of each Creditor to provide written notice to the Debtor of any change of the Creditor's address.

5.4     <u>Disputed Claims</u>.

a. A disputed claim is a claim that has not been allowed or disallowed [by a final non-appealable order] and, either:

i. A proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

ii. No proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent or unliquidated.

17

b. <u>Delay of Distribution on a Disputed Claim</u>:  No distribution will be made on a disputed claim unless the claim is allowed by [a final non-appealable order].

c. <u>Settlement of Disputed Claims</u>:  The Debtor shall have the power and authority to settle and compromise a disputed claim with court approval and compliance with Federal Rule of Bankruptcy Procedure 9019.

ARTICLE VI
<u>PAYMENTS TO CREDITORS UNDER THE PLAN</u>

Unless otherwise provided in this Plan or indicated on Appendix 1 and 2, funds received by the Trustee/Debtor or otherwise included in this Plan but not specifically disbursed to a secured creditor under this Plan, shall be used to pay the following claims in the priority indicated:

6.1        Except as provided in § 1191(e) of the Bankruptcy Code, all claims entitled to priority under § 507 of the Bankruptcy Code shall be paid in accordance with § 1129(a)(9) of the Bankruptcy Code and as set forth in Article I and **Appendix 2**.

6.2        Pursuant to § 1191(e) of the Bankruptcy Code, the payment of claims entitled to priority under § 507(a)(2) and § 507(a)(3) of the Bankruptcy Code shall be paid under the Plan as set forth on Article I and **Appendix 2**.

6.3       All secured claims shall be paid in accordance with § 1129(b)(2)(A), § 1191(b), and § 1191(c) of the Bankruptcy Code, as set forth on Article III and **Appendix 2**.

6.4       After payment of the foregoing claims, sums received by the Trustee/Debtor shall be paid, on a pro-rata basis, to allowed general unsecured judgment claims.  As set forth in Article III and **Appendix 2**.

6.5       In accordance with § 1191 of the Bankruptcy Code and the terms of this Plan, the Debtor's interest holders shall retain their interests in the Debtor as set forth in Article III and **Appendix 2**.

ARTICLE VII
TRUSTEE COMPENSATION

The Trustee shall be paid for services rendered in this Chapter 11 case an Administrative Expense Claim under § 507 of the Bankruptcy Code and pursuant to Article I of the Plan, or otherwise as may be agreed upon by the Debtor and Trustee. All fees and expenses requested by the Trustee, are subject to review and approval by the Court under §§ 329 and 330 of the Bankruptcy Code.

ARTICLE VIII
ATTORNEY COMPENSATION

The Debtor's attorney Robert M. Stahl, LLC, shall be paid for the services rendered to the Debtor herein as an Administrative Expense and/or Priority claim

19

under § 507 of the Bankruptcy Code and pursuant to Article I of this Plan, as set forth on Appendix 2. All fees and expenses requested by the Debtor's attorney, including those on Appendix 2, are subject to review and approval by the Court under §§ 329 and 330 of the Bankruptcy Code.

ARTICLE IX
LIQUIDATION ANALYSIS

As required by § 1190(1)(B) of the Bankruptcy Code and the Local Rules of the Bankruptcy Court, the Debtor has evaluated all of the Debtor's assets in a liquidation scenario. See **Appendix 3** Liquidation Analysis. On December 5, 2022, the Debtor filed its Amended Schedules A/B [Dkt. #56-5]. Schedule A/B sets forth the personal property owned by the Debtor, which includes equipment used in Debtor's operations, vehicles, goods held for resale, cash and accounts receivable. Schedule A/B is attached hereto as **Appendix 4**. Schedules D, E/F set forth the secured and unsecured debts of the debtor. Debtor has also attached Amended Schedules D, E/F as **Appendix 5**. Existing cash and existing accounts receivable would be used to pay post-petition accounts payable, leaving limited funds available in a liquidation. The security deposit held by **Glenbrook Level Green, LLC** would be taken by the landlord and would not be available in a liquidation. The goods held for resale are being used for post-petition operations and not be a significant source of recovery in a liquidation. The equipment, vehicles and office furniture have a net total value after subtracting secured debt of

$288,853.00 of zero, and any liquidation would be subjected to liquidation fees of approximately 20%. Therefore, the Debtor estimates that there would be less than $00.00 for distribution to creditors in a liquidation. Under the Debtor's proposed Plan, payments on Allowed Unsecured Claims total approximately **$160,000.00**, and total payments under the Plan would be approximately **$529,303.00**.

In order to make an informed decision whether to accept or reject the Plan, Creditors may compare the return on their claims that will be received under the Plan to the return that would be received if this case were converted to a case under Chapter 7 of the Bankruptcy Code and liquidation of all assets were to occur. If the Debtor's case were to be converted to Chapter 7, for the reasons just explained, Holders of Allowed Unsecured Judgment Claims would receive no payment or distribution as the only source of payment for such creditors under the Plan – the Debtor's future income – would no longer be available because in Chapter 7 the Debtor would cease operating and would have no income.

ARTICLE X
EXECUTORY CONTRACTS

10.1.     Assumption. Pursuant to § 365 of the Bankruptcy Code, the Debtor assumes each Executory Contract and Unexpired Lease, effective upon the Effective Date of this Plan, unless (i) it has been previously rejected by Order of the Bankruptcy Court or (ii) is listed below:

| Unexpired Lease/ Executory Contract | Name and Address of Party to Debtor's Executory Contract or Unexpired lease |
|---|---|

| Contracts | To Be Assumed |
|---|---|
| Lease for: 1207 Wilson Road, Glen Burnie, MD 21061 | Glenbrook Level Green, LLC 6408 Dowerhouse Road Upper Marlboro, MD 20772 |
| Commercial Insurance Policy | Selective Insurance Co. of the Southeast c/o Brett Theisen One Pennsylvania Plaza, 37th Floor New York, NY 10119 |
| Contracts | To Be Rejected |
| NONE | |

10.2.     <u>Approval of Assumption of Executory Contracts</u>. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval pursuant to § 365 of the Bankruptcy Code, of the assumption of each contract assumed pursuant to § 10.1 of the Plan.

10.3     Assumption Procedures. Any monetary defaults existing under each Executory Contract or Unexpired Lease to be assumed under the Plan will be cured in ten regular consecutive installments over the Plan period. However, all payments are current, and no cure payments are known to be required.

10.4     Insurance Policies. All the Debtor's insurance policies and any agreements, documents, or instruments relating thereto are treated as Executory Contracts that will be assumed under the Plan.

10.5     Rejection Damages. Any claim for damages against the Debtor arising from the rejection by the Debtor of any Executory Contract pursuant to this Article or during the pendency of the Debtor's Chapter 11 case shall be forever barred and shall not be enforceable against the Debtor or its property or interests in property, and no Holder of any such Claim shall participate in any distribution under the Plan with respect to such Claim, unless a proper Proof of Claim arising from the rejection of an Executory Contract or an Unexpired Lease under the Plan is filed

22

with the Bankruptcy Court and served on the Trustee and the Debtor no later than thirty (30) days after the Effective Date.

## ARTICLE XI
## GENERAL PROVISIONS

11.1      Effect of Confirmation.

(a)       Binding on Debtor and Creditors. Except as provided in §§ 1142 or 1192 of the Bankruptcy Code, as applicable, the provisions of this Plan shall, upon the Confirmation Date, bind the Debtor, each and every Creditor of this estate and each party in interest, whether or not the Claim of such Creditor or party is provided for by the Plan and whether or not such Creditor or party has accepted or has rejected the Plan.

(b)       Injunction against Interference with Plan. Upon entry of the Confirmation Order, all Holders of a Claim along with their respective present or former assignees, employees, agents, officers, directors or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

(c)       Injunction against Certain Actions. As of the Confirmation Date, all Holders of a Claim are permanently enjoined, from: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral administrative or other forum) to enforce the Claim against the Debtor, or any of its property or any direct or indirect successor in interest to the Debtor or any property of any such successor; (b) enforcing, levying, attaching (including without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order relating to the Claim against the Debtor or any of its property or any direct  or indirect successor in interest to the Debtor or any property of any such successor;

23

(c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind relating to the Claim against the Debtor or any of its property or any direct or indirect successor in interest to the Debtor or any property of any such successor; and (d) acting or proceeding in any manner, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the fullest extend permitted by applicable law.

(d)       Rights of Action. On and after the Confirmation Date, the Debtor shall have the exclusive right and standing to enforce for the benefit of the Debtor and its Creditors, any and all present or future rights, claims or causes of action against any person and rights of the Debtor that arose before or after the Petition Date, including, but not limited to rights claims, causes of action, avoiding powers, suits and proceedings arising under §§ 510, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code. On and after the Confirmation Date, all persons are permanently enjoined from commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively or otherwise) on account of or respecting any claim, debt, right or cause of action of the Debtor for which the Debtor retains sole and exclusive authority to pursue in accordance with this Section. The Statement of Financial Affairs mentions that the payments paid to Mr. Brown in the year prior to the bankruptcy filing total $104,000.00 in gross wages for 2021. These payments were paid to Mr. Brown as salary and commissions for services rendered and are not recoverable. The Debtor does not believe that there are any other recoveries that are warranted.

11.2     Discharge. On the Confirmation Date of this Plan, and subject to occurrence of the Effective Date, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1142(d)(1)(A) of the Bankruptcy Code, but the Debtor will not be discharged of any debt: (i) imposed by this Plan; (ii) of a kind specified in § 1142 (d)(6)(A) if a timely complaint was

filed in accordance with Bankruptcy Rule 4007(c); or (iii) of a kind specified in § 1142 (d)(6)(B). However, if the Plan is confirmed on a non-consensual basis, the Debtor will receive its discharge upon the payment of its final distributions in accordance with § 1192 of the Bankruptcy Code.

11.3    Determination of Claims. The Debtor reserves the right to seek the estimation of any contingent Claim, including Claims arising from any guarantees executed by the Debtor.

11.4    Waiver of Certain Fees. All Holders of Allowed Unsecured or Allowed Priority Tax Claims, waive all penalties, default interest and/or late fees that may have accrued on their Claims as of the Effective Date.

11.5    Professional Fees and Expenses. All fees for services rendered and expenses incurred after the Confirmation Date by Professionals engaged by the Debtor shall be paid by the Debtor in the ordinary course of business without the necessity of filing fee applications or seeking approval of the Bankruptcy Court, except with respect to fees incurred by the Subchapter V trustee, which shall be subject to Bankruptcy Court approval in accordance with applicable Bankruptcy Code and Local Rules and allowed as an Administrative Expense to the extent they are approved by the Court.

11.6    U.S. Trustee Fees. Intentionally deleted.

11.7    Payment of Statutory Fees. To the extent applicable, all fees payable pursuant to Chapter 123 of Title 28, United States Code, as determined by the Bankruptcy Court on the Confirmation Date, shall be paid by the Debtor.

11.8    Setoffs. The Debtor reserves all rights to offset a mutual debt owed to any Creditor against such Creditor's Allowed Claim or against any distribution required to be made by the Debtor to such Creditor with respect to its Allowed Claim.

11.9    Transfers. Any transfer of property by the Debtor pursuant to the Plan, specifically including but not limited to the sale or transfer of any real property, and

25

the making or delivery of an instrument of transfer may not be taxed under any law imposing a stamp tax or similar tax as set forth in § 1146(c) of the Bankruptcy Code.

11.10    <u>Modification of Plan</u>. The Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify this Plan and to solicit acceptances of any amendments or modifications hereto, at any time prior to the entry of the Confirmation Order. After the entry of the Confirmation Order, the Debtor may, upon order of the Bankruptcy Court, amend or modify this Plan, in accordance with § 1193 of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan. A Holder of an Allowed Claim or Interest that is deemed to have accepted this Plan shall be deemed to have accepted this Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim or Interest of such Holder.

11.11    <u>Withdrawal or Revocation</u>. The Debtor may withdraw or revoke this Plan at any time prior to the Confirmation Date. If the Debtor revokes or withdraws this Plan prior to the Confirmation Date, or if the Confirmation Date does not occur for any reason, then this Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claim or interest by or against the debtor or any other person or to prejudice in any manner the rights of the Debtor or any other person on any further proceedings involving the Debtor.

11.12    <u>Notices</u>. Any notices to or requests of the Debtor or the Trustee by parties in interest under or in connection with this Plan shall be in writing and occur by electronic mail and served either by (i) regular first-class mail, return receipt requested, postage prepaid, (ii) hand delivery, or (iii) reputable overnight delivery

26

service, all charges prepaid, and shall be deemed to have been given when received by the following parties:

> The Debtor:
> Christopher Brown, President
> East Coast Welding and Construction Co., Inc.
> 1207 Wilson Road
> Glen Burnie, MD 21061
>
> Robert M. Stahl, Esquire
> Robert M. Stahl, LLC
> 1142 York Road
> Timonium, MD 21093
> stahllaw@comcast.net
> robstahl.law@gmail.com
>
> The Trustee:
>
> Monique Almy, Subchapter V Trustee
> Crowell & Moring
> 1001 Pennsylvania Avenue, Nw., 10th Floor
> Washington, DC 20004

11.13    Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

11.14    Binding Effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of, the successors or assigns of such entity.

11.15    Appendices. The Appendices attached to the Plan are incorporated into the Plan by reference as if the same were fully rewritten herein.

11.16    Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

11.17   <u>Controlling Effect</u>. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Bankruptcy Rules), the laws of the State of Maryland govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise providing in this Plan.

ARTICLE XII
<u>PLAN PROPOSED IN GOOD FAITH</u>

The Debtor represents that it is within the Debtor's ability to carry out this Plan, and the Plan is submitted in good faith.

ARTICLE XIII
<u>JURISDICITON OF THE COURT</u>

13.1   The Bankruptcy Court shall retain exclusive jurisdiction of all matters arising under, arising out of, or related to, This Chapter 11 case and this Plan pursuant to, and for the purposes of §§ 105(a) and 1142 of the Bankruptcy Code and for, among other things the following purposes until such time as the Debtor's obligations under the Plan are fully discharged:

(a) To hear and determine any motions for the assumption or rejection of Executory Contracts, and the allowance of any Claims resulting therefrom;

(b) To determine any and all adversary proceedings, applications and contested matters;

(c) To hear and determine any objection to any Claims;

(d) To liquidate or estimate damages or determine the manner and time for such liquidation or estimation in connection with any contingent or unliquidated Claim;

(e) To adjudicate all Claims to any lien on any of the Debtor's assets or any proceeds thereof;

28

(f) To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated, and/or if the Effective Date never occurs;

(g) To issues such orders in aid of execution of this Plan to the extent authorized by § 1142 of the Bankruptcy Code;

(h) To consider any modifications of this Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(i) To hear and determine all applications for compensation and reimbursement of expenses of Professionals under §§ 330, 331 and 503(b) of the Bankruptcy Code;

(j) To enforce and interpret the Plan and to hear and determine any dispute or any other matter arising out of or related to this Plan and consider any modifications of the Plan in accordance with § 1193 of the Bankruptcy Code;

(k) To recover all assets of the Debtor and property of the estate, wherever located;

(l) To hear and determine matters concerning state, local and federal taxes in accordance with §§ 346, 505 and 1146 of the Bankruptcy Code;

(m) To enforce and interpret the discharge of Claims and Interests effected by this Plan and to enter and implement such orders as may be appropriate with regard thereto;

(n) To hear any other matter consistent with the provisions of the Bankruptcy Code;

(o) To enter a final decree closing this Chapter 11 case; and

(p) To hear and determine such other issues as the Bankruptcy Court deems necessary and reasonable to carry out the intent and purposes of this Plan.

East Coast Welding and Construction Co Inc

Date:  July 31, 2023                    By:   /s/ Christopher Brown
                                        Christopher Brown, President


                                        Counsel for Debtor:

Date: July 31, 2023                       /s/ Robert M. Stahl
                                        ROBERT M. STAHL, Bar No. 11537
                                        Law Office of Robert M. Stahl, LLC
                                        1142 York Road
                                        Lutherville, MD 21093
                                        (410) 825-4800
                                        Robstahl.law@gmail.com
                                        Stahllaw@comcast.net
                                        *Attorney for Debtor*

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the  **31st day of July 2023**, notice of filing the Debtor's Amended Chapter 11 Subchapter V Plan of Reorganization (the "Plan") was served by EM/ECF to those parties listed on the docket as being entitled to such electronic notices, which parties are identified on the attached service listed; and a copy of the Plan was mailed first class, postage prepaid or sent by electronic mail to the parties so identified on the attached service list.

/s/ Robert M. Stahl
Robert M. Stahl